UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER RAY RICHARDSON,

     Plaintiff,

                                   Case No. 08-12951

-vs-                           HON. AVERN COHN

MOHAMMED NASSER and
MICHAEL ANTHONY,

     Defendants.

_____/

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NASSER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT ANTHONY'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This is a civil rights case under 42 U.S.C. § 1983 with pendant state law claims. Defendant Mohammed Nasser (Nasser) is a detective for the City of Lincoln Park, Michigan. Defendant Michael Anthony (Anthony) is a police officer for the City of Taylor, Michigan. Plaintiff Christopher Ray Richardson (Richardson), claims that Nasser and Anthony violated his constitutional rights during their investigation of the death of his daughter, Nevaeh Ann Richardson (Nevaeh), by fabricating evidence and misrepresenting Richardson's statements while seeking to obtain a warrant for his arrest.

The complaint is in six counts:

(I)     42 U.S.C. § 1983 Claim for False Arrest as to Nasser and Anthony;

(II)    42 U.S.C. § 1983 Claim for Malicious Prosecution as to Nasser and Anthony;

(III)   42 U.S.C. § 1983 Claim for Fabrication of Evidence as to Nasser and Anthony;

(IV)   42 U.S. C. § 1983 Claim for Failure to Investigate as to Nasser;

(V)   False Arrest as to Nasser; and

(VI)   Malicious Prosecution as to Nasser and Anthony.

Nasser and Anthony are sued jointly and severally and in their individual capacities.

Now before the Court is Nasser's motion for summary judgment on grounds that (1) there was probable cause to arrest Richardson, (2) Nasser's actions did not violate Richardson's constitutional rights, (3) Nasser is entitled to qualified immunity with respect to any constitutional violation, (4) Nasser's actions did not violate Richardson's state law rights, and (5) Nasser is entitled to governmental immunity for the state law claims. Anthony moves for summary judgment on grounds that (1) Anthony was not involved in the arrest and prosecution of Richardson, (2) Anthony is entitled to qualified immunity with respect to any constitutional violation, and (3) Anthony is entitled to governmental immunity with respect to any state law violations.  For the reasons that follow, Nasser's motion will be granted as to Counts II, III, IV and VI and denied as to Counts I and V.  Anthony's motion will be granted in full.

## II. FACTS

The facts are from the parties' papers and exhibits.[1]

_____

[1]Richardson's claims all relate to actions that occurred before a district judge signed the complaint and arrest warrant against him.  Events, interviews, and testimony taking place after that date will be discussed if they relate back to the conduct or state of mind of relevant actors before the arrest warrant was signed.  Other facts and evidence which were not available to the defendants before the arrest warrant was issued are not relevant to Richardson's claims.

**A.**

Nevaeh was born on November 15, 2007.  She resided with her parents, Richardson and Cynthia Goscicki (Goscicki), her paternal grandmother Adie Green, and Adie Green's husband Gerald.

On November 22, 2007, Nevaeh was taken to Wyandotte Henry Ford Hospital (Wyandotte Hospital) after her parents observed her bleeding from her nose and mouth. Upon admission, she was diagnosed with a rectal tear and was transferred to Children's Hospital in Detroit for specialized care.

At Children's Hospital, Nevaeh was diagnosed with multi-organ failure, sepsis, non-accidental trauma to the anus, and cardiac arrest.  She died at Children's Hospital on November 24, 2007.

After performing an autopsy on November 26, 2007, a medical examiner determined that Nevaeh's death was a homicide resulting from "extensive penetrating trauma to the anus."

**B.**

On November 22, 2007 the Lincoln Park Police were contacted by a nurse at Wyandotte Hospital who reported a suspicion of criminal sexual conduct involving Nevaeh.  Nasser and Steward Howell (Howell) investigated the call.  They interviewed Richardson, Goscicki, Adie and Gerald Green, and other family members who had been in contact with Nevaeh.  They also interviewed a social worker who stated that Richardson and Goscicki suggested that Adie and Gerald Green may have been responsible for Nevaeh's injuries, but that she doubted their truthfulness.  The officers determined that Richardson, Goscicki, and the Greens were the only persons who had

4

been alone with Nevaeh prior to her admission to the hospital.

Following the initial interviews, Richardson was arrested for domestic assault based on an altercation with Goscicki that occurred while they were taking Nevaeh to the hospital. He was arraigned and remained in police custody throughout the remainder of the investigation.

On November 24, 2007 Goscicki was interviewed again by Howell.[2] At this interview, she suggested that Richardson may have been responsible for Nevaeh's injuries. She recounted a November 21, 2007 argument between herself and Richardson. After the argument, Richardson locked her out of the house and was alone with Nevaeh for up to thirty minutes. She stated that she heard Nevaeh screaming while Richardson was alone with her, was unusually fussy afterward, and cried whenever she was put down. She also stated that Richardson had expressed doubts about his paternity of Nevaeh and had threatened to harm both Nevaeh and Goscicki if found out he was not her father.[3]

Richardson was also interviewed again on November 24, 2007 by Nasser.[4] During this interview, he offered to serve as a drug informant and repeatedly asked to take a polygraph exam. Following his interview with Richardson, Nasser contacted Anthony, who is licenced in Michigan as a polygraph examiner, and arranged for him to conduct a polygraph exam at the Taylor police station on November, 26, 2007.

---

[2]This interview was recorded by video.

[3]Richardson admitted that he made the threats, but asserted that he would not have acted upon them.

[4]This interview was recorded by video.

Nasser and Howell also learned that Richardson had a history of drug abuse and domestic violence. He had previously been charged with assaulting Goscicki and had also been convicted of assaulting Gerald Green.

### C.

Richardson's polygraph exam consisted of three parts: a pre-exam interview, the polygraph exam, and a post-exam interview.[5] During the entire process, Nasser was either physically present or watched via closed circuit television. The pre-exam interview was used by Anthony to prepare questions for the polygraph exam. Richardson's polygraph exam included the following questions:

1. Did you cause any of those injuries to Nevaeh?

2. Are you the person who caused any of Nevaeh's injuries?

3. Did you ever put any object inside Nevaeh's rectum?

Richardson gave a negative response to each question.

Anthony determined that Richardson did not answer those three questions truthfully. At the start of the post-exam interview, Anthony explained to Richardson that he had failed the exam with respect to those three questions and stated that Richardson needed to explain why he failed the exam. A district judge who reviewed the recording of the ensuing post-exam interview described it as grueling and stated that "it was the intent of [Anthony] to get any kind of incriminating statement that he could possibly get from [Richardson] to indicate that he was responsible for any kind of penetrating trauma

---

[5]The entire polygraph exam was recorded by video.

6

to that child."[6]  As he conducted the interview, Anthony engaged in a number of questionable techniques.  First he lied to Richardson, telling him that a search of Richardson's residence had uncovered DNA evidence proving that he was responsible for Nevaeh's injuries. He also threatened Richardson, stating that, unless Richardson explained why he failed the exam, the police would tell Richardson's guards and fellow inmates that he was a pedophile and infant molester.

Despite these occasional strong-arm tactics, the post-exam interview generally took a more conciliatory tone.  The general thrust was that Anthony believed that Richardson was not a bad person who would intentionally harm his daughter.  Instead, Anthony hypothesized that, through his inexperience as a father, Richardson may have accidentally injured Nevaeh while changing her diaper and applying diaper rash cream.

In response to Anthony's questioning, Richardson eventually made several admissions.  First, he admitted that injuries to Nevaeh's arms and head could have been caused during an altercation between himself and Goscicki.  However, he only admitted that the altercation was a possible cause of her injuries and never stated that they were intentional.  Richardson also admitted that it was possible that he could have accidentally caused the injury to Nevaeh's anus while changing her diaper and applying diaper rash cream.  When pushed further by Anthony, he admitted that he did cause her injuries, stating that he inserted his finger into her anus while applying diaper rash cream.  However, he recanted moments later, stating that he only told Anthony what he though Anthony wanted to hear.  He claimed that Goscicki was the only person to apply

---

[6]Transcript of Preliminary Exam, Case No. 07-505-FY, 25th District Court, Lincoln Park, Michigan, January 25, 2008, at 67-68.

diaper rash cream to Nevaeh or to take her temperature with a rectal thermometer. He stated that he could not, under any circumstances, have caused her fatal injuries.

Immediately following the polygraph exam, Nasser again interviewed Richardson.[7]  Like Anthony, he stated a belief that Richardson was a good person , but may have accidentally harmed Nevaeh due to his inexperience as a father.  Nasser traced Richardson's hand and asked him to show him which finger he inserted into Nevaeh's anus and how far he inserted it.  Nasser pointed to several locations on the tracing of Richardson's index finger; Richardson stated that he did not insert his finger that far.  Richardson finally agreed to a point suggested by Nasser, but it is not clear from the tracing which location was indicated.  Richardson asserts that he only admitted that his fingernail could have been inserted.

**D.**

Following these interviews, Nasser believed that Richardson had committed a criminal offense resulting in Nevaeh's injuries.  He completed an investigative report and submitted it to the prosecutor's office.  He also submitted Anthony's polygraph report, Nevaeh's medical records, signed witness statements, and videotapes of the November 26, 2007 polygraph exam and related interviews to the prosecutor's office.

A Wayne County prosecutor reviewed all of the evidence submitted by Nasser and concluded that there was probable cause to bring criminal charges against Richardson in connection to Nevaeh's death.[8]  He prepared a criminal complaint and

---

[7]This interview was also recorded by video.

[8]As described below, the prosecutor's independent review of the evidence and conclusion that probable cause existed does not absolve Nasser because of the

arrest warrant charging Richardson with (1) felony murder, (2) first degree child abuse, and (3) first degree criminal sexual conduct. The complaint and warrant merely contained conclusory statements reciting the elements of each crime and did not include any specific factual allegations against Richardson.

Nasser then took the complaint and warrant to a district judge to have them signed. The district judge conducted a probable cause hearing, but did not independently review the evidence against Richardson. Nasser was the sole testifying witness at the probable cause hearing. He testified that:

> upon interviewing [Richardson], um, he made admissions that he did in fact stick his finger in [Nevaeh's] rectum. Um, at that time, he – I traced his hand, and he pointed to, uh his index fing – or pointer finger, and showed me how far he inserted the finger into the rectum.[9]

Based on Nasser's testimony, the district judge concluded that probable cause existed and signed the complaint and warrant. Richardson was then charged with the offenses.

Nasser continued his investigation after Richardson was charged. He conducted a polygraph exam of Gerald Green in December 2007. He also attempted, without success, to schedule and conduct a polygraph exam of Goscicki.

In January 2008, the district judge conducted a preliminary exam which included testimony from witnesses interviewed by Nasser and Howell as well as other individuals identified after the initial investigation. In addition, the district judge independently

---

subsequent statements that Nasser made to the district judge while testifying at the probable cause hearing.

[9]Transcript of Probable Cause Hearing, Case No. 07-505-FY, 25th District Court, Lincoln Park, Michigan, December 3, 2007.

reviewed the evidence produced by Nasser, including the videotapes of Nasser and Anthony's interviews with Richardson.[10]  At the conclusion of the preliminary exam, the district judge determined that there was probable cause to believe that the charged offenses had occurred.  However, he concluded that there was not probable cause to believe that Richardson had committed the offenses.  He noted that the evidence against Richardson was circumstantial and doubted the veracity of the admissions that were made during the polygraph exam and subsequent interviews.  The district judge was critical of the interviews conducted by Nasser and Anthony and of Nasser's characterization of the admissions.  He stated that if he had been aware of the actual statements that Richardson made – as opposed to Nasser's interpretation of them – he would not have signed the complaint and warrant.  The charges against Richardson were then dismissed.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate when the evidence submitted shows that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(a).  Accordingly, the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying what it believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When a motion for summary judgment is properly made and supported, an opposing party must set out

---

[10]The district judge reviewed the substance of the interviews, but did not consider the results of the polygraph exam.

10

specific facts showing a genuine issue for trial.    Fed. R. Civ. P. 56(e).  All facts and inferences should be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970).

## IV.  ANALYSIS

### A. 42 U.S.C. § 1983

42 U.S.C. § 1983 creates no substantive rights; rather, it is a vehicle by which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).  "To successfully establish a claim under § 1983, a claimant must show that he or she was deprived of a right secured by the Constitution and the laws of the United States by one acting under the color of law."  Ahlers v. Schebil, 188 F.3d 365 (6th Cir. 1999) (internal citations omitted).  Richardson makes four separate claims under § 1983: false arrest, malicious prosecution, fabrication of evidence, and failure to investigate.

### 1. False Arrest

A plaintiff claiming false arrest under § 1983 must prove that the arresting officer lacked probable cause to arrest him.  Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005).  Under most circumstances, an arrest pursuant to a facially valid arrest warrant is a complete defense to a § 1983 claim for false arrest.  Id.  However, the Sixth Circuit has noted an exception to this general rule:

> A facially valid warrant is not always sufficient to merit summary judgment in an action brought pursuant to § 1983 when evidence exists that a defendant intentionally mislead or intentionally omitted information at a probable cause hearing for an arrest or a search warrant provided that the misleading or omitted information is critical to the finding of probable

11

cause.

Id. n.4 (citing Mays v. City of Dayton, 134 F.3d 809, 806 (6th Cir. 1998) and United States v. Atkin, 107 F.3d 1213, 1217 (6th Cir. 1997)).

When a plaintiff is arrested pursuant to a facially valid arrest warrant, he must prove two elements to sustain a claim for false arrest.  First, a plaintiff must prove that an officer intentionally mislead a judge or omitted information at a probable cause hearing.  Second, the plaintiff must prove that the misrepresentation or omission was essential to the finding of probable cause.  Even if a misrepresentation occurred, a plaintiff cannot prevail on a claim of false arrest if there was probable cause to support the arrest.

### 2. Malicious Prosecution

The Sixth Circuit has held that a plaintiff may not maintain a § 1983 claim for malicious prosecution merely by labeling it as such.  Gregory v. City of Louisville, 444 F.3d 725, 748 (6th Cir. 2006).  Instead, a court must look to the plaintiff's specific allegations to determine whether there is any allegation of a constitutional violation.  Id.  In Gregory the plaintiff alleged that the defendant had omitted exculpatory evidence and fabricated other incriminatory evidence against him.  He argued that, but for the actions of the defendant, there would have been no probable cause to detain him.  The Sixth Circuit found that the plaintiff had stated a claim for continued detention without probable cause in violation of the Fourth Amendment.  Id.

In the complaint, Richardson alleges two bases for his claim of malicious prosecution: his arrest  despite a lack of probable cause and the fabrication of evidence against him.  Richardson's allegation of arrest without probable cause is, in essence, a claim of false arrest and is subject to the legal standard described above.  The legal

12

standard for Richardson's allegation of fabrication of evidence will be discussed in the following section addressing Richardson's express claim of fabrication of evidence.

### 3. Fabrication of Evidence

A plaintiff can prevail on a claim of fabrication of evidence under § 1983 when "evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have effected the decision of a jury." Id. at 737. Thus a plaintiff must prove that (1) a fabrication of evidence occurred and (2) the defendant was aware of the fabrication. Even then, not all cases of fabrication of evidence are actionable. If the fabricated evidence does not effect a jury's decision, a plaintiff cannot prevail. In the context of a probable cause hearing, a defendant has a complete defense to a fabrication of evidence claim if a district judge would have found probable cause without considering the fabricated evidence.

### 4. Failure to Investigate

A claim of failure to investigate under § 1983 is merely another way of asserting that a police officer lacked probable cause when arresting a petitioner. The claim is successful when arresting officers "had knowledge of some evidence which was inculpatory and other evidence which was exculpatory, yet without conducting further investigation, simply concluded that probable cause did exist." Ahlers v. Schebil, 188 F.3d 365, 371 (6th Cir. 1999). Like the other claims described above, a police officer cannot be held liable for a failure to investigate if there is probable cause to make an arrest. Id. ("Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused."). In fact, once probable cause is established, an officer is "under no obligation to give any credence to a suspect's story." Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir. 1988). To prevail on a claim of failure to

13

investigate, a plaintiff must show that a police officer possessed exculpatory evidence which was not pursued and that the police officer lacked probable cause to make an arrest.

### 5. Qualified Immunity

Because Richardson seeks § 1983 relief against Nasser and Anthony as state officials, he must also overcome their claims to qualified immunity by showing that (1) the facts alleged, taken in the light most favorable to him, show that their conduct violated his constitutional rights and (2) the rights were clearly established, that is, the right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 201–02 (2001) (internal quotation marks omitted).[11]   Even if Richardson can establish that Nasser or Anthony violated his rights based on the analyses above, he cannot prevail on his claim unless the rights were clearly established at the time of his arrest in December, 2007.

### B. State Law Claims

### 1. False Arrest

Like a claim of false arrest under 42 U.S.C. § 1983, a false arrest claim under Michigan law requires "an illegal or unjustified arrest" which is "not based on probable cause." Peterson Novelties, Inc. v. City of Berkley, 259 Mich. App. 1, 18 (2003).  If an arrest was based on probable cause – and was therefore legal – it cannot be the basis for a claim of false arrest.  However, there is no need to show that the arrestee was actually

---

[11] The order in which the inquiry proceeds, given above as specified by Saucier, is no longer required. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).  "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

14

guilty of any offense.  Id.  ("Whether the plaintiff would actually have been convicted is irrelevant because actual innocence is not an element of false arrest.").

Michigan courts have further clarified that a false arrest is "one without legal authority."  Lewis v. Farmer Jack Division, Inc., 415 Mich. 212, 218 n.2 (1982) (quoting RESTATEMENT (SECOND) OF TORTS § 45A cmt. (b)).  Thus a police officer who participates in an arrest made pursuant to a properly issued warrant cannot be held liable for false arrest.  Id.

## 2. Malicious Prosecution

To establish a claim of malicious prosecution in Michigan, the plaintiff must prove the following elements:

> (1) that the defendant has initiated a criminal prosecution against him,
> (2) that the criminal proceedings terminated in his favor,
> (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and
> (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.

Matthews v. Blue Cross & Blue Shield of Michigan, 456 Mich. 365, 378 (1998).  Malicious prosecution claims require a balancing of the state's interest in letting finished litigation remain undisturbed with the need to protect the interests of those wrongfully prosecuted. Id.  As a result, malicious prosecution claims have traditionally be difficult to maintain.  Id.

Michigan courts have stated that "the only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a compliant, without which there is no probable cause."  King v. Arbic, 159 Mich. App. 452, 466 (1987).  Applying the standard set forth in King, the Sixth Circuit held that a state law

15

claim of malicious prosecution does not lie when a plaintiff merely alleges that the defendant "failed, as the complaining witness, to make a full and fair disclosure of the material facts." Moldowan v. City of Warren, 578 F.3d 351, 391 (6th Cir. 2009) (finding that plaintiff's only allegation was that defendant deliberately failed to convey exculpatory statements to the prosecutor).  Thus the probable cause element requires a false statement and the omission of mitigating evidence is not sufficient.

### 3. Governmental Immunity

The Michigan Supreme Court has held that both false arrest and malicious prosecution are intentional torts that are subject to governmental immunity.  Odom v. Wayne County, 482 Mich. 459, 480 (2008).  That court further held that the Governmental Tort Liability Act did not alter the common law standard for governmental immunity for intentional torts.  Id. at 472-73.  To qualify for governmental immunity for an intentional tort, a defendant-employee must establish that:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope his authority,
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
> © the acts were discretionary, as opposed to ministerial.

Id at 480 (citing Ross v. Consumers Power, 420 Mich. 567 (1984)).  A defendant-employee does not act with good faith when he "does not act honestly," but acts with "a wanton or reckless disregard for the rights of another."  Id. at 473-74.

**C. Probable Cause**

The absence of probable cause is a necessary element for each of the claims that Richardson has made against Nasser and Anthony.  Therefore, both defendants will have a complete defense against Richardson's claims if there was probable cause to charge and arrest him.  Because the existence of probable cause is a complete defense to all of the claims for both defendants, this issue will be addressed before Richardson's individual claims.  Because Richardson's claims address Nasser's investigation and Richardson's arrest, probable cause must be analyzed at the conclusion of Nasser's investigation and at the signing of the criminal complaint and arrest warrant.

To prevail on summary judgment, Nasser and Anthony must each show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.  To the extent that facts are disputed, they must be construed in a light most favorable to Richardson as the non-moving party.

**1.**

Probable cause to make an arrest exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."  Beck v. State of Ohio, 379 U.S. 89, 91 (1964).  A court must assess the presence of probable cause based on the "officer's knowledge at the time of an arrest."  Thacker v. City of Columbus, 328 F.3d 244, 255 (6th Cir. 2003); see also Peet v. City of Detroit, 502 F.3d 557, 565 (6th Cir. 2007) ("[P]robable cause determinations must be evaluated according to the information the police knew at the moment of the challenged

conduct, not information learned for the first time afterwards."). In other words, a court may not consider either incriminating or exculpatory evidence gleaned after the police action was taken.

The validity of the police action must be assessed from the perspective of "a prudent person, or one of reasonable caution." Thacker, 328 F.3d at 255. "The Fourth Amendment does not require that a police officer know a crime occurred at the time the officer arrests or searches a suspect. . . . The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty." United States v. Strickland, 144 F.3d 412, 415 (6th Cir. 1998). To determine probable cause, a court must generally look to the totality of the facts and circumstances known to the officers at the time of the arrest. Thacker, 328 F.3d at 257. However, under some circumstances a single factor – such as eyewitness testimony – can be sufficient to establish probable cause. Skousen v. Brighton High School, 305 F.3d 520, 528 (6th Cir. 2002) ("Eyewitnesses have firsthand knowledge and are presumed to be reliable and truthful.").

Finally, "[t]he existence of probable cause is a jury question, unless there is only one reasonable determination that is possible." Crockett v. Cumberland College, 316 F.3d 571, 581 (6th Cir. 2003). Thus a court may not resolve disputed facts, but may make a determination of probable cause when there is no dispute regarding the underlying facts.

## 2.

Nasser is entitled to summary judgment on the claim of failure to investigate under § 1983 if he did have probable cause to believe that Richardson had committed some offense when Nasser submitted his investigative report to the prosecutor's office. Excluding evidence from Richardson's interviews, Nasser did not possess sufficient

18

evidence to establish probable cause that Richardson committed any offense with respect to Nevaeh.  After concluding his initial investigation, Nasser had established that Nevaeh's injuries occurred between November 19, 2007 – when she was seen by a pediatrician – and November 23, 2007 – when she was taken to the hospital. Nasser also established that Richardson, Goscicki, Adie Green, and Gerald Green were the only persons alone with Nevaeh during that time period.  Nasser was also aware of Goscicki's interview with Howell when she recounted her fight with Richardson and Nevaeh's changed behavior after Goscicki was locked out of the house by Richardson.  Finally Nasser was aware that Richardson had expressed doubts about his paternity of Nevaeh and had threatened violence if he was not her father.  Nasser was also aware of Richardson's history regarding substance abuse and domestic violence.

This evidence merely establishes that Richardson was a "bad person" with tendencies toward violence  who had an opportunity to harm Nevaeh.  Standing alone, it was not sufficient to create probable cause.  While the Fourth Amendment "necessitates an inquiry into probabilities, not certainty," Strickland, 144 F.3d at 415, probable cause is not satisfied whenever a police officer finds a bad person who had an opportunity to commit the crime. This evidence provided no more than speculation as to Richardson's culpability and no evidence of any kind that tied him – as opposed to another suspect – to Nevaeh's injuries.

Goscicki's eyewitness statement of her fight with Richardson is insufficient to create probable cause because she was locked out of the house and did not witness the alleged

19

harm.  Even if she is considered a reliable witness,[12] Skousen, 305 F.3d at 528, a finding of probable cause based solely on eyewitness testimony requires that the eyewitness view the actual commission of the crime.  See, e.g., id.  Goscicki's eyewitness testimony merely establishes that Richardson had an opportunity to harm Nevaeh, not that he actually harmed her.  Nasser relies on Peet for the proposition that probable cause can be established even when an eyewitness does not observe the commission of a crime.  Nasser's reliance is misplaced because the eyewitness in Peet did observe the actual crime.  Peet, 502 F.3d at 564 ("[Eyewitness] told police . . . that the night before she saw two men approach [victim's] car on either side and take his coat by force.").

However, statements made by Richardson may be sufficient to establish probable cause to believe that he committed some offense with respect to Nevaeh.  Richardson made a number of contradictory statements during his polygraph exam and related interviews.  He admitted that Nevaeh's arms and head could have been injured during an altercation between himself and Goscicki.  He admitted that he could have accidentally caused her fatal injuries while changing her diaper and applying diaper rash cream and later stated that he did insert his finger into her anus while performing those tasks.  Yet he also recanted his admissions regarding her fatal injuries, asserting that he did not engage in any actions which could have caused the injuries.

A jury, hearing the admissions made by Richardson, could reasonably conclude that he had accidentally injured Nevaeh and was guilty of some offense, albeit one with a

---

[12]During her initial interviews, Goscicki suggested that Adie and Gerald Green may have caused Nevaeh's injuries. Thus, of the four persons with an opportunity to harm Nevaeh, she implicated everyone but herself.

20

reduced mental state.  However, a reasonable jury could also consider the grueling and sometimes threatening nature of the interviews and choose to credit Richardson's denial of culpability.  Because a reasonable jury could reach either conclusion based on its assessment of Richardson's credibility at different parts of his interviews, there is a genuine issue of material fact as to whether Nasser had probable cause to believe Richardson had committed an offense when he forwarded his investigative results to the prosecutor's office. As a result, Nasser is not entitled to summary judgment on this basis.

**3.**

The second inquiry is whether there was probable cause to charge Richardson with the three counts included in the criminal complaint.  If probable cause did exist, both Nasser and Anthony are entitled to summary judgment on all of the counts other than the claim of failure to investigate.  When the facts are viewed in a light most favorable to Richardson, a reasonable jury could find that there was not probable cause to charge Richardson with any of the offenses.  Therefore, Nasser and Anthony are not entitled to summary judgment on this basis.

In the criminal complaint, Richardson was charged with First Degree Child Abuse which requires a person "knowingly or intentionally cause harm to a child." MCL §750.136. To establish probable cause with respect to this charge, a defendant must show  that the harm was intentional or knowing, not merely accidental.  Richardson was also charged with First Degree Criminal Sexual Conduct which requires a person engage in sexual penetration of a person under the age of 13.  MCL §750.520(b).  While no mental state is

included in the statute, something more than strict liability is needed.[13]  The third charge of felony murder is derivative of another felony offense such as those enumerated above.

As noted above, the evidence other than Richardson's interviews is not sufficient to establish probable cause – it merely establishing that he had an opportunity to harm Nevaeh.  When the evidence from Richardson's interviews is viewed in a light most favorable to him, a reasonable jury could find that there was not probable cause to believe that he committed the charged offenses.  While Richardson did make admissions during the interviews, he never suggested that he caused injuries to Nevaeh in an intentional or sexual manner.  Taken as a whole, the entire thrust of the interviews is that Richardson may have accidentally harmed Nevaeh, that his intentions were good, and that he was merely trying to care for her.  The only evidence which could arguably be used to suggest something other than accidental harm – the finger tracing by Nasser – is inconclusive. Without proof of how far Richardson actually indicated he inserted his finger, the facts must be viewed in a light most favorable to him.  For the purposes of defendants' motions, the Court must accept Richardson's position that he only indicated that his fingernail may have been inserted.

When the disputed facts are construed in Richardson's favor and the admissions made during the interviews are taken in their full context, it is not clear that there was probable cause to believe that Richardson had committed the charged crimes.  Because a reasonable jury could find that probable cause was lacking, Nasser and Anthony are not entitled to summary judgment on the ground that there was probable cause to arrest

---

[13] If read literally, a person would be guilty of first degree criminal sexual conduct under the statute for taking a baby's temperature with a rectal thermometer.

Richardson for the charged crimes.

### D. Claims Against Nasser

### 1. § 1983: False Arrest

### a.

Nasser's is not entitled to summary judgment on Richardson's claim of false arrest because genuine issues of material fact exist with respect to this claim.

There is no dispute that Richardson was arrested pursuant to a facially valid arrest warrant or that Nasser was the sole witness who testified in support of the arrest warrant at the probable cause hearing.  There is also no dispute that Nasser mislead  the district judge when he testified as to the evidence against Richardson.  The critical issue at the probable cause hearing was the fatal injury to Nevaeh's rectum.  Nasser testified:

> upon interviewing the Defendant, um, he made admissions that he did in fact stick his finger in [Nevaeh's] rectum.  Um, at that time, he – I traced his hand, and he pointed to, uh his index fing – or pointer finger, and showed me how far he inserted the finger into the rectum.[14]

This testimony suggests that Richardson had confessed to intentionally committing these acts.   Technically, Nasser's testimony accurately recounted statements made by Richardson; however, it did not accurately recount the substance and context of Richardson's admissions.  As described above, Richardson's interviews were focused almost exclusively on the premise that he may have accidentally caused the injuries. Richardson agreed that he could have accidentally caused Nevaeh's injuries while changing her diaper, but he also expressed doubt that this was the actual cause.  He also

---

[14]Transcript of Probable Cause Hearing, Case No. 07-505-FY, 25th District Court, Lincoln Park, Michigan, December 3, 2007.

vehemently denied that any harm he may have caused was intentional.  Nasser's testimony regarding Richardson's admission is misleading because it fails to provide a proper context and suggests that Richardson confessed to intentionally harming Nevaeh.  The assertion that Nasser did in fact mislead the district judge is bolstered by the judge's statements at the preliminary exam that, had he been given a complete version of the interviews, he would not have signed the warrant.

Even if Nasser did mislead the district judge, he is not liable for false arrest unless his actions were intentional.   When the evidence is viewed in a light most favorable to Richardson, a reasonable jury could find that Nasser acted intentionally.  Nasser observed Richardson's interviews in person or by closed circuit television.  As a result, he had first-hand knowledge of the context of Richardson's admissions.   A jury could reasonably conclude that he was aware of the true facts surrounding Richardson's admissions and simply chose to distort them to ensure that the complaint and warrant would be signed.  Therefore, Nasser is not entitled to summary judgment regarding his intent to mislead the district judge.

### b.

Even if Nasser's actions violated Richardson's constitutional rights, he is entitled to summary judgment on the basis of qualified immunity if those rights were not clearly established at the time he testified before the district judge.  The Sixth Circuit's decision in Voyticky, which predated Nasser's testimony by two years, merely reaffirmed existing law with respect to testimony at probable cause hearings.  As a result, Richardson had a clearly established right at the time of his probable cause hearing not to have Nasser intentionally mislead the district judge.  But, even if there were no case law directly on point,

24

Nasser would not be entitled to qualified immunity.  Once a police officer takes an oath to tell the truth at a judicial hearing, there is no need for prior case law to dictate that he may not intentionally mislead the court.

Because genuine issues of material fact remain regarding Richardson's claim of false arrest under 42 U.S.C. § 1983 and Nasser is not entitled to qualified immunity, Nasser's motion for summary judgment must be denied on this count.

### 2. § 1983: Malicious Prosecution

As described above, Richardson alleges two bases for his claim of malicious prosecution: his arrest despite a lack of probable cause and the fabrication of evidence against him.  Richardson has asserted facts sufficient to establish a cause of action under § 1983 based on these allegations; however, they are completely duplicative with other claims in the suit.  Count I of Richardson's complaint alleged a violation of § 1983 based on false arrest.  There is no substantive difference between a claim of false arrest and the claim of arrest without probable cause.  See Voyticky, 412 F.2d at 677.  Thus Richardson's claim of arrest without probable cause is subsumed under his earlier claim of false arrest and cannot be maintained as an independent cause of action under malicious prosecution.  In a similar manner, Richardson's claim of malicious prosecution based on fabrication of evidence is indistinguishable from his independent claim of fabrication of evidence in Count III.  Therefore Nasser's motion for summary judgment with respect to malicious prosecution under 42 U.S.C. § 1983 will be granted because it does not state an independent claim.

25

### 3. § 1983: Fabrication of Evidence

Richardson alleges in his complaint that Nasser and Anthony fabricated the "confession" that he gave regarding the homicide of Nevaeh. In response to Nasser's motion for summary judgment, Richardson claims that "Anthony and Nasser conspired to fabricate an 'admission' that Sergeant Nasser could then misrepresent to a court as a 'confession.'"[15]

Nasser's motion for summary judgment must be granted with respect to this claim because there is no support for the allegation that evidence was fabricated. Richardson's claim is based on the statements that Nasser made while testifying at the probable cause hearing. Those statements related to Richardson's polygraph exam and related interviews, which were all recorded by video. The Court has reviewed the recordings and found that Richardson did in fact make all of the statements attributed to him. Therefore, Nasser's testimony was not fabricated. To the extent that Richardson's claim is based on the fact that Nasser's testimony failed to provide a proper context for the statements that he made, it is a misrepresentation of evidence – not a fabrication – and is subsumed under his claim for false arrest. Because there is nothing in the record to suggest that Nasser fabricated any of the evidence presented against Richardson, he is entitled to summary judgment on the 42 U.S.C. § 1983 claim of fabrication of evidence.

---

[15]Plaintiff's Response to Mohammed Nasser's Motion for Summary Judgment at 15.

26

### 4. § 1983: Failure to Investigate

#### a.

Richardson alleges that Nasser failed to investigate other leads regarding the death of Nevaeh and exercised tunnel vision in pursuing charges against him. Because Nasser's investigation into Richardson effectively ended when he provided his report to the Prosecutor's Office, the claim must be assessed at that moment in time. In addition, since Nasser did not recommend any specific charges against Richardson, the analysis is not limited to the specific charges which were eventually selected by the prosecutor.

Richardson is correct to assert that there was evidence in the case suggesting that someone else could have caused Nevaeh's fatal injuries. Richardson and Goscicki initially suggested that the Greens could be responsible for her injuries. Richardson also suggested, during his polygraph exam and related interviews that Goscicki could have accidentally caused Nevaeh's injuries. However, a police officer is not required to give credence to a suspect's assertions once probable cause is established and is under no obligation to exhaust all potential leads once they establish probable cause.

Richardson cites several cases where police officers were held liable under § 1983 for failing to pursue leads which may have lead to other suspects. Kuehl v. Burtis, 173 F.3d 646, 651 (8th Cir. 1999); Sevigny v. Dicksey, 846 F.2d 953, 957-59 (4th Cir. 1988); BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1996). Nasser's investigation can be distinguished from these cases because the officers made arrests without seeking warrants. In contrast, Nasser did not immediately arrest Richardson after concluding that there was probable cause to believe Richardson had committed a criminal offense. Instead Nasser created an investigatory report and provided it, along with all relevant evidence, to the prosecutor's

27

office.  At that point, the prosecutor independently reviewed the evidence and decided to bring criminal charges against Richardson.  Only after the prosecutor decided to bring charges did Nasser seek to arrest Richardson.

The Court has found no authority holding a police officer liable for failure to investigate under § 1983 when a prosecutor independently evaluates the evidence and decides to bring charges.  In this case Nasser reached a subjective conclusion regarding Richardson's role in Nevaeh's death, but he did not act immediately upon that conclusion.  Rather, he sought a second opinion from the prosecutor and then carried out the prosecutor's decision to press charges.  The Court does not believe that Nasser's investigation and reliance on the prosecutor's independent judgment was defective.

Furthermore, Nasser did not end his investigation of Nevaeh's death once Richardson was charged.  Even after arresting Richardson, he conducted a polygraph exam of Gerald Green and sought unsuccessfully to conduct a polygraph exam of Goscicki.  Thus he continued to pursue other suspects, even after the prosecutor chose to charge Richardson in connection with Nevaeh's death.

While the question may be close, the Nasser's behavior with respect to the <u>decision</u> to charge and arrest Richardson did not violate Richardson's Fourth Amendment rights.  Nasser followed proper channels in seeking the prosecutor's expertise in bringing charges and in seeking an arrest warrant before conducting the arrest.  While Nasser's behavior at the probable cause hearing can be challenged, his investigation cannot.  As a result, he is entitled to summary judgment on Richardson's 42 U.S.C. § 1983 claim for failure to investigate.

**b.**

28

In the alternative, even if Nasser's actions did constitute a failure to investigate in violation of Richardson's rights, those rights were not clearly established when Nasser's investigation ended.  In assessing whether an officer failed to properly investigate a case prior to making an arrest, the Sixth Circuit has cautioned against "hasty, unsubstantiated arrests" and "incomplete, poorly conducted investigations."  Ahlers, 188 F.3d at 371.  Thus law focuses on the process of an investigation, not necessarily on a police officer's final decision.  When a police officer follows a proper procedure – by making a thorough investigation and not rushing to judgment – his decision will not violate the arrestee's rights,  even if some exculpatory evidence exists or all potential leads are not exhausted.

Nasser did not rush to judgment or make a hasty decision.  After he made a subjective determination that there was probable cause to charge Richardson, he sought a second opinion by referring the case to the prosecutor's office.  Even if his subjective decision proved incorrect, it was not clearly established that the process Nasser followed in referring the case to the prosecutor's office and relying on the prosecutor's decision in selecting which charges to bring violated Richardson's rights.  Thus Nasser would be entitled to qualified immunity, even if his actions did in fact violate Richardson's rights.

### 5. State Law: False Arrest

#### a.

Nasser is not entitled to summary judgment on Richardson's claim of false arrest under Michigan law.  As previously discussed, there is a genuine issue of material fact as to whether there was probable cause to arrest Richardson for the charged offenses.

29

Unlike the federal law, the Michigan Supreme Court's decision in <u>Lewis</u> suggests that a claim for false arrest cannot succeed when the arrest was made pursuant to a properly issued warrant.  <u>Lewis</u>, 415 Mich. at 218 n.2.  However, the rule in <u>Lewis</u> should be applied in this case.  As explained more fully above, a police officer should not be able to hide behind a facially valid warrant when the warrant was obtained through his own intentional misrepresentation.  Nasser's motion for summary judgment with respect to the state law claim of false arrest must be denied for the same reasons as the 42 U.S.C. § 1983 claim for false arrest.

**b.**

In addition, Nasser cannot rely on governmental immunity with respect to the state law claim of false arrest.  There is no dispute between the parties that Nasser was acting within the scope of his employment and was engaged in a discretionary act when he testified at the probable cause hearing.  Thus he would have governmental immunity if he acted in good faith.  As described above, there is a genuine issue of material fact as to whether Nasser's misrepresentations before the district judge were intentional.  If a jury were to find that Nasser acted intentionally, then his actions could not have been in good faith.  Construing the facts in a light most favorable to Richardson, it must be concluded that Nasser did not act in good faith when testifying before the district judge and, therefore, is not entitled to summary judgment on the basis of governmental immunity.

**6. State Law: Malicious Prosecution**

30

If order to prevail in a malicious prosecution claim under Michigan law, Richardson must prove all four elements of the <u>Matthews</u> test.  In this case, there is no dispute that Nasser initiated criminal prosecution against Richardson by testifying at the probable cause hearing or that the criminal proceedings were terminated in Richardson's favor when the charges were dismissed.  However, Richardson cannot prove the third element – probable cause.

The Sixth Circuit's decision in <u>Moldowan</u> has set an extremely high bar for the probable cause element of malicious prosecution.  Nasser's behavior does not meet this high standard because he did not "knowingly swear[] to false facts" at the probable cause hearing.  <u>Moldowan</u>, F.3d at 391.  As described above, the statements made by Nasser were all technically true, even if they were misleading due to a lack of context.  However, the Sixth Circuit held that a failure to make a full and fair disclosure is not sufficient to establish malicious prosecution when no false facts were uttered.

Because the probable cause element requires a false statement, Nasser's omission of contextual and mitigating evidence is not sufficient.  Therefore Nasser is entitled to summary judgment on the state law claim of malicious prosecution.

### E. Claims Against Anthony

### 1. § 1983: False Arrest

### a.

There is nothing in the record to suggest that Anthony participated in any way in Richardson's arrest.  Anthony's involvement in the investigation was limited to the administration of polygraph examinations.  He did not request the prosecutor to charge

31

Richardson.  He did not testify at the probable cause hearing.  He did not participate in Richardson's arrest.  In sum, there is no basis on which to hold Anthony liable for false arrest based on his own actions in this case.

**b.**

Richardson also seeks to hold Anthony liable for Nasser's actions by alleging a conspiracy between them.  However, he merely makes conclusory allegations with no factual support in the record.  Richardson seems to rely on the fact that Nasser was present at the Lincoln Park police station while Anthony administered Richardson's polygraph exam as proof that Nasser and Anthony conspired to elicit an admission or confession from Richardson.  At best this establishes a conspiracy between Nasser and Anthony to seek to obtain a confession from Richardson.

However, to prevail on a claim of false arrest, the alleged conspiracy must involve the Nasser's misrepresentation at the probable cause hearing, not the prior interviews with Richardson.  Richardson has presented no evidence to suggest that Nasser and Anthony conspired to misrepresent that statements that Richardson did make when Anthony interviewed him.  As described more fully below, Anthony's report of the polygraph exam and associated interviews which was given to Nasser, reviewed by the prosecutor, and available to the district judge, was completely accurate and transparent.  Had Anthony conspired to misrepresent Richardson's statements, it is unlikely that he would have been so forthcoming with an accurate version of them.  Richardson has produced no evidence suggesting a conspiracy between Anthony and Nasser to misrepresent evidence at the probable cause hearing.  Therefore, Anthony is entitled to summary judgment on the 42 U.S.C. § 1983 claim of false arrest.

32

### 2. § 1983: Malicious Prosecution

For the reasons stated in section IV.D.4. above, Richardson's malicious prosecution claim under 42 U.S.C. § 1983 did not contain any independent claims. Because the claims asserted are subsumed under the independent claims of false arrest and fabrication of evidence, Anthony is entitled to summary judgment on this count.

### 3. § 1983: Fabrication of Evidence

There is no basis in the record to assert that Anthony fabricated evidence in this case. As described above, Anthony's direct involvement in the case was limited to the administration of polygraph exams and associated interviews. Anthony produced an accurate, albeit abbreviated, polygraph report after conducting Richardson's polygraph exam. The report stated that Richardson made several admissions, that the admissions were of accidental rather than intentional harm, and that Richardson later recanted them. He also provided a recording of the interviews to the detectives investigating Nevaeh's death. In sum, Anthony did not fabricate the substance of the polygraph exam and associated interview which was recorded and submitted to investigators and also provided an accurate summary of the polygraph exam and associated interviews. Because the record contains no evidence that Anthony fabricated any evidence against Richardson, he is entitled to summary judgment on the 42 U.S.C. § 1983 claim of fabrication of evidence.

### 4. State Law: Malicious Prosecution

As with the federal claims for arrest without probable cause, Richardson simply

33

has not alleged sufficient facts to show that Anthony should be liable for malicious prosecution.  As noted above, Anthony's involvement in the investigation was limited to the administration of polygraph exams.  He did not recommend that charges be filed or appear at the probable cause hearing.  Therefore, he did not initiate any proceedings against Richardson.  In addition, he did not swear to any false facts or fill out an unfair incident report.  As noted above, Anthony's report, although abbreviated, was accurate in its description of the interviews.  In addition, Anthony included a video recording of the entire interview.  Because Richardson cannot establish two of the four required elements for  a malicious prosecution claim under Michigan law, Anthony is entitled to summary judgment on this claim.

## V.  CONCLUSION

For the reasons above, Counts II, III, and IV and VI are DISMISSED as to Nasser and all Counts are DISMISSED as to Anthony.  The case must go forward on Richardson's § 1983 claim for false arrest and his state law claim of false arrest against Nasser as a consequence of his testimony before the district judge at the probable cause hearing.

SO ORDERED.

Dated:  December 9, 2009          s/ Avern Cohn                                    
                                 AVERN COHN
                                 UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 9, 2009, by electronic and/or ordinary mail.


                                 s/ Julie Owens                                 
                                 Case Manager, (313) 234-5160


34